UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 05-10319-RCL

UNITED STATES OF AMERICA

v.

STEPHAN STELMACH
BRYAN MCHUGH

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT STELMACH'S MOTION TO SUPPRESS**
**EVIDENCE ILLEGALLY SEIZED**
**(DOCKET ENTRY # 25)**

**February 2, 2007**

**BOWLER, U.S.M.J.**

In the January 9, 2007 Report and Recommendation, this court reserved a decision on the government's argument that the officers had probable cause to conduct a warrantless search of the saddlebags at the scene thereby justifying the later search at the police station under the dictates of Chambers v. Maroney, 399 U.S. 42, 46-52 (1970).  (Docket Entry # 60, pp. 32-34).  This court invited further briefing on the issue and explicitly directed the parties to "pinpoint the relevant time from which to evaluate the police officers' collective knowledge and the existence of probable cause to believe that the saddlebags contained contraband or evidence of a crime."  (Docket Entry # 60, p. 60).

The government, which bears the burden of proof, identified

the time as prior to the consent search of the saddlebags.
(Docket Entry # 63; "It is the government's view that [the
consent] search occurred after probable cause to search the
motorcycles had actually materialized").  Accordingly, adhering
to the government's position, see, e.g., United States v. Lopez,
380 F.3d 538, 543 n. 3 (1st Cir. 2004) (focusing on government's
stated justifications for the existence of probable cause to
search), this court examines the existence of probable cause to
believe that the saddlebags contained contraband, evidence of a
crime or other seizable material at the time immediately prior to
the consent search.

On January 22, 2007, the government and defendant Stephan
Stelmach ("Stelmach") filed briefs.[1]  (Docket Entry ## 61 & 63).
Defendant Bryan McHugh ("McHugh") did not submit a brief before
the January 23, 2007 deadline.[2]  Accordingly, the matter is ripe

---

[1]  Stelmach's brief (Docket Entry # 61) exceeds, at times,
the scope of this court's order to limit the brief to the above
noted issue.  (Docket Entry # 60, nn. 16 & 25).  This court
instructed the parties that the briefs should not address the
validity of "the impoundment decisions" or the validity of "the
inventory searches" because this court had made a ruling.
(Docket Entry # 60, n. 25).  Stelmach's discussion of the
inventory search and the alleged noncompliance with the Ashland
Police Department's inventory policy exceeds those limits.
Stelmach did not obtain leave of this court to address such
issues.  See LR. 7.1.

[2]  The absence of a brief from McHugh is understandable.
The January 9, 2007 Report and Recommendation concluded that the
officers' decision to impound McHugh's motorcycle was reasonable
under the circumstances.  This court additionally concluded that
the inventory search of McHugh's motorcycle was reasonable under
the circumstances.  As to Stelmach, however, this court found the

for review.

## FACTUAL BACKGROUND

Facts are set forth in depth in the prior Report and Recommendation, incorporated herein and, hence, need not be repeated at length.[3]  Familiarity with the record is presumed. Briefly, the government correctly points out that the officers had the following information prior the consent search.

Through radio transmissions, they knew that a large fight had occurred involving Outlaws at T.J.'s Bar and Spirits ("T.J.'s").  They also knew that one of the Outlaws was armed with a knife and that the one with the goatee, McHugh, had a ball peen hammer.[4]  From training, the officers knew that ball peen hammers were one of the Outlaws' favorite weapons and that they generally kept ball peen hammers on their motorcycles.  They also knew that Outlaws were known to carry knives and firearms.

---

decision to impound his motorcycle did not comport with the Fourth Amendment.
     McHugh asked and received additional time from the district judge to file objections to the January 9, 2007 Report and Recommendation.  This court does not interpret McHugh's request as seeking additional time from this court to file the supplemental brief.

     [3]  This court has, however, considered all of the facts and circumstances existing immediately prior to the consent search in arriving at this court's recommendation.

     [4]  The government incorrectly describes the radio transmissions as indicating that the Outlaws were armed with knives and hammers.  (Docket Entry # 39, p. 24).

In addition, Officer Robert MacQuarrie ("Officer MacQuarrie") recognized Stelmach when he was traveling on his motorcycle at a high rate of speed in a direction away from T.J.'s.  Officer MacQuarrie also noticed that a logo on the back of McHugh's vest was consistent with membership in a motorcycle gang.  Like Stelmach, McHugh was traveling at a high rate of speed away from T.J.'s.  Officer MacQuarrie and Officer Brian Araujo ("Officer Araujo") reversed course with activated sirens but had to pursue Stelmach and McHugh for about a mile and a half before the two pulled to the side of the road.

At the roadside, Officer MacQuarrie found and removed a ball peen hammer hanging out of the inside of McHugh's vest.  Shortly thereafter, Officer Araujo removed a knife from one of McHugh's pants pockets.  No other weapons were found during the pat frisks.

After being placed in handcuffs, Stelmach acknowledged to Officer MacQuarrie that he had just come from T.J.'s where he had been in an argument.  The officers knew that the altercation at T.J.'s resulted in injuries and that a victim required an ambulance.  Given such knowledge, including the information transmitted by radio, and also knowing that Outlaws have a reputation of being dangerous, the officers knew that there might be a forthcoming charge of assault and battery with a dangerous

weapon, i.e., a knife or a ball peen hammer.[5]  Having found both

a knife and a ball peen hammer, the officers also knew or

reasonably suspected that Stelmach and McHugh were the ones who

had been involved in the altercation with the dangerous weapons.


## DISCUSSION

The government bears the "burden to demonstrate the

legitimacy of the search" where, as here, the search is conducted

without a warrant.  United States v. Winston, 444 F.3d 115, 123-

124 (1st Cir. 2006), cert. denied, __U.S.__, 2007 WL 135705 (Jan.

22, 2007); see California v. Acevedo, 500 U.S. 565, 589 n. 5

(1991).  In the case at bar, the government posits that the

officers were justified in reasonably believing that the

saddlebags contained additional weapons which may have been used

in the fight at T.J.'s.  (Docket Entry ## 39, p. 24; Docket Entry

# 63, p. 3).

The government correctly does not seek to justify the search

at the station as a search incident to the arrest at the

roadside.  See United States v. Lopez, 380 F.3d at 543 n. 3

("search of an automobile occurring at a police station 'some

time after the arrest . . . cannot be justified as a search

_____

[5]  It was not until after the consent search that Lieutenant
Scott Rohmer gave the instruction to arrest Stelmach and McHugh
for assault and battery with a dangerous weapon.  The consent
search also took place prior to the witness identifications.

incident to an arrest'"). Nor does the government argue that any search or seizure of items at the roadside provided an independent source or otherwise avoided application of the exclusionary rule.[6] To the contrary, the government states that if this court does not find probable cause to search and given the finding that Stelmach withdrew his consent, "the physical items observed by Officer MacQuarrie in Stelmach's saddlebags during the consent search, i.e., a knife and Outlaw clothing, would be suppressed." (Docket Entry # 63).

The relevant legal principle is easily stated albeit less easily applied. Examining the facts and circumstances collectively known to the police officers involved in the investigation including the officers at T.J.'s, United States v. Fiasconaro, 315 F.3d 28, 36 (1st Cir. 2002) (discussing collective knowledge principle), the officers may search a vehicle without a warrant if they "have probable cause to believe that it contains contraband, evidence of a crime, or other matter that may lawfully be seized." United States v. Martinez-Molina, 64 F.3d 719, 730 (1st Cir. 1995); accord United States v.

---

[6] This court reserved a ruling on the application of the exclusionary rule to the contents of Stelmach's saddlebags and allowed the parties to address the issue in the supplemental briefs. (Docket Entry # 60, p. 44). The government bears the burden of establishing the applicability of certain exceptions to the exclusionary rule. See United States v. Almeida, 434 F.3d 25, 28 (1st Cir. 2006); United States v. Serrano, 870 F.2d 1, 18 n. 18 (1st Cir. 1989); United States v. Runyan, 275 F.3d 449, 456 (5th Cir. 2001) (government bears burden of showing "why the exclusionary rule should not apply").

Fiasconaro, 315 F.3d at 37 ("warrantless search of an automobile based upon probable cause to believe that the vehicle contained evidence of a crime did not contravene the Fourth Amendment's warrant requirement") (citing Carroll v. United States, 267 U.S. 132, 153 (1925), and California v. Acevedo, 500 U.S. at 569); see also United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992) ("only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is probable cause to believe that the vehicle contains contraband or other evidence of criminal activity . . . even in cases where an automobile is not immediately mobile") (citations and internal brackets and quotation marks omitted).  The facts and circumstances known to the officers must be sufficient "to cause a person of reasonable caution" to believe that a search of the saddlebags is justified. United States v. Martinez-Molina, 64 F.3d at 730 (further noting that "there must have been particular facts indicating" that the automobile or container "carried contraband, evidence of crime, or other seizable matter").

In addition, where there is probable cause to believe that the object of an automobile search, in this case the saddlebags, contains contraband or additional evidence of a crime, a warrantless search of that container does not contravene the Fourth Amendment.  California v. Acevedo, 500 U.S. at 580 ("police may search an automobile and the containers within it

where they have probable cause to believe contraband or evidence
is contained"); <u>United States v. Cleveland</u>, 106 F.3d 1056, 1063
(1st Cir. 1997); <u>United States v. Schiavo</u>, 29 F.3d 6, 9 (1st Cir.
1994).  The mere fact that the contraband is contained in a
locked or hidden container "does not justify any extra measure of
precaution."[7]  <u>United States v. Lopez</u>, 380 F.3d at 544.  Finally,
as long as the search is "reasonable in scope, [it] need not be
conducted contemporaneously with the seizure or at the seizure
site."  <u>United States v. Panitz</u>, 907 F.2d 1267, 1272 (1st Cir.
1990) (citations omitted); <u>accord</u> <u>Chambers v. Maroney</u>, 399 U.S.
at 50-52; <u>United States v. Lopez</u>, 380 F.3d at 545 ("relocation of
the vehicle from the parking lot to the police station did not
deprive the officers of probable cause to search"); <u>United States
v. Le</u>, 377 F.Supp.2d 245, 252-253 (D.Me. 2005).

The difficulty with the government's position is that
Officers MacQuarrie and Araujo uncovered and secured both the
ball peen hammer and the knife prior to the time any probable
cause to search for contraband and evidence arose.  <u>Cf.</u> <u>United
States v. Goldman</u>, 41 F.3d 785, 787 (1st Cir. 1994) (recognizing

---

[7] Although this court noted in the January 9, 2007 opinion
that, "A person usually has an expectation of privacy in a closed
container such as an unopened saddlebag" (Docket Entry # 60, p.
32), the principle does not apply to the circumstances in the
case at bar because there "is no extra measure of consideration"
in a locked compartment of an automobile or motorcycle.  <u>United
States v. Lopez</u>, 380 F.3d at 544.
The Report and Recommendation also mistakenly omitted the
words "Officers MacQuarrie and" at the start of the sentence on
line 16 of page 13.

as relevant to determination of probable cause to search car for contraband or evidence of crime that when "the missing kilogram was not found on Goldman's person," the police "had further reason to believe that it was in his car").

On the other hand, the officers knew that the fight at T.J.'s involved members of the Outlaws.  They also knew that the Outlaws are dangerous and engage in crimes ranging from murder to prostitution.  As a result of Officer MacQuarrie's training, the officers also knew that ball peen hammers were one of the Outlaws' preferred weapons which they kept on their motorcycles and that members were known to carry knives as well as firearms. Although reputation alone may be insufficient to establish probable cause, an officer's knowledge of the suspect's activities and reputation may support a finding of probable cause.  See United States v. Harris, 403 U.S. 573, 582-583 (1971); United States v. Infante-Ruiz, 13 F.3d 498, 503 (1st Cir. 1994) (paraphrasing Harris for principle that, "suspect's reputation, standing alone is insufficient to support probable cause").  In addition to McHugh's and Stelmach's flight from T.J.'s, Stelmach's acknowledged involvement in the "argument" lent further justification for the search.  See United States v. Harris, 403 U.S. at 583 ("admissions of crime . . . carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search").

9

Thus, the police officers not only had a knowledge of the reputation of Outlaws to carry ball peen hammers, knives and firearms, they also had Stelmach's acknowledged participation in the "argument" at T.J.'s.  Normally, this would suffice to establish probable cause.  See Id.

In the case at bar, however, the particular facts show that the altercation involved a knife and a ball peen hammer.  Police had already uncovered a knife and a ball peen hammer before conducting the search.  It is therefore a close question whether they then had particular facts indicating that the saddlebags had additional weapons or other contraband.

After giving the matter serious reflection, this court finds that the government has not met its burden.  The warrantless search of Stelmach's saddlebags at the Ashland police station cannot be justified on the basis that the officers had probable cause at the roadside to believe the saddlebags contained contraband, evidence of a crime or other matter that could lawfully be seized.

The government concedes that if this court finds the officers lacked probable cause and, given the withdrawal of the consent, the physical items in Stelmach's saddlebags "would be suppressed."  (Docket Entry # 63, p. 4).  Having previously concluded that the government's other basis to justify the warrantless search at the station, i.e., as an inventory search,

violated the Fourth Amendment, the physical items in Stelmach's saddlebags, including the knife, are subject to suppression.  See United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001) ("usual remedy for seizures made without probable cause is to exclude the evidence wrongfully seized in order to deter future violations of the Fourth Amendment").


CONCLUSION

     In accordance with the foregoing discussion, this court **RECOMMENDS**[8] that Stelmach's motion to suppress evidence illegally seized (Docket Entry # 25) be allowed to the extent that the physical contents of Stelmach's saddlebags at the Ashland police station are subject to suppression.


                         /s/ Marianne B. Bowler
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge


---

     [8]   Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).